COMMONWEALTH of Pennsylvania, Appellee,

v.

**Patrick DONOHUE, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 28, 2013.

Filed Feb. 21, 2013.

---

6. Judge Charles also relies on *Burton* in his opinion. Suppression Court Opinion, 2/22/2012, at 7–8.

Karl Baker, Public Defender, Philadelphia, for appellant.

Hugh J. Burns, Jr., Assistant District Attorney and Mary L. Huber, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, and FITZGERALD,* JJ.

OPINION BY BOWES, J.:

Patrick Donohue appeals from the December 5, 2011 judgment of sentence of two to four years incarceration that was imposed after he was adjudged guilty at a nonjury trial of burglary, theft, trespass, criminal mischief, and receiving stolen property. We reject his challenge to the sufficiency of the evidence supporting his convictions and affirm.

Mable Wolek testified as follows. On June 20, 2010, she owned residential property located on 3656 Academy Road, Philadelphia, that she was preparing to sell. She did not reside at that location, but it did have a few items of furniture in it. She went to the real estate on the day in question, a Sunday, to "check everything and make sure everything was okay. [She] cleaned up a little bit, and then [she] put out the trash and recycling." N.T., 8/24/11, at 9. She left sometime between 6:00 and 7:00 p.m. on June 20, 2010, after securing the windows and locking the door. When she departed, an unopened bottle of Pepsi was located in the kitchen cabinet.

At approximately 10:00 a.m. on June 21, 2010, Ms. Wolek returned to the house with her roommate, who was going to help her clean. The roommate went to the door and asked, "Did you leave the door unlocked?" *Id.* at 11. When Ms. Wolek responded in the negative, the roommate informed her that it was opened. The frame to the front door had been broken. Inside, the ceilings were torn down, and copper pipes were stolen. Kitchen appliances, toolboxes, and items in a backyard shed were also taken. The aforementioned Pepsi bottle was in the basement, opened, and most of its contents consumed.

Philadelphia Police Officer Kimberly Merry testified as follows. She was on duty on June 21, 2010, and responded to Ms. Wolek's call about the burglary. Offi-

---

* Former Justice specially assigned to the Superior Court.

cer Merry dusted for fingerprints, including the bottle of Pepsi, obtaining nine usable fingerprints. From the bottle, she lifted an imprint from a right ring finger and a right thumb. The fingerprints were submitted for analysis. Scott Copeland from the latent print division of the Philadelphia Police Department established that the fingerprints on the Pepsi bottle belonged to Appellant while the other seven imprints did not. The victim indicated that she did not know Appellant.

■ Based on this evidence, Appellant was convicted of the above-described offenses. On December 5, 2011, he proceeded to sentencing. Appellant had a prior record score of repeat felony offender. Appellant was described as a career criminal, and, at fifteen years of age, was adjudicated delinquent based on his commission of acts constituting burglary. He also had committed multiple robbery convictions and similar crimes. The offense gravity score for burglary was seven, so the guidelines called for a sentence of thirty-five to forty-five months imprisonment, plus or minus six months. Appellant was sentenced to two to four years incarceration. In this ensuing appeal from the judgment of sentence, Appellant maintains:

> Was not the evidence insufficient as a matter of law to sustain appellant's convictions for burglary and related offenses, where the only evidence linking appellant to the crime scene was two fingerprints found on a bottle of soda that was inside the property, there was no evidence that the fingerprints had recently been left on the bottle of soda and the bottle of soda had only been brought into the property one or two days before the alleged incident?

Appellant's brief at 3.

We first outline the pertinent standard of review of this contention:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Knox,* 50 A.3d 749, 754 (Pa.Super.2012)(quoting *Commonwealth v. Brown,* 23 A.3d 544, 559–60 (Pa.Super.2011)(en banc)).

There are various cases that discuss the sufficiency of the evidence to support a conviction where, as here, the sole evidence consists of fingerprints discovered at the scene of the crime. In the seminal decision of *Commonwealth v. Cichy,* 227 Pa.Super. 480, 323 A.2d 817, 818 (1974), we observed that "the accuracy of fingerprint evidence for purposes of identification" is established and that "the probative value

of that evidence depends entirely on the circumstances of each case. Unless those circumstances are such that the fingerprint could only have been impressed at the time and place the crime was committed, such evidence is insufficient to sustain a conviction." On the other hand, where "circumstances indicate impression at [the time of the crime], and the defendant's innocent presence is excluded, such evidence has been held sufficient to convict." *Id.* at 819.

 Under these precepts, a conviction will be upheld "where fresh fingerprints are found at the place of illegal entry to private burglarized premises where a defendant's presence is unexplained." *Id.* at 818. Similarly, if the prints are discovered in a place accessible only by force or on objects that the defendant could not have contacted under legitimate circumstances, a conviction will be upheld. *Id.* However, "the mere discovery of prints in a public place with which a number of people may have had innocent contact is insufficient by itself to convict." *Id.* Additionally, if the prints are located on a readily movable object in common usage and the possibility of innocent contact with that object is great, the conviction will not be sustained. *Id.*

A comparison of the fingerprint cases established the uniform application of these principles. In *Cichy,* the defendant was convicted solely based on the fact that his fingerprints were discovered on a cigarette pack located next to a vending machine in a public venue that was burglarized. We ruled that the conviction was infirm, given that the defendant admittedly had visited the scene of the burglary during normal business hours before the date of the burglary, no prints were discovered on the cigarette machine, and there was no indication that the cigarette package with the defendant's prints was taken from the machine. Thus, in *Cichy,* there was an innocent explanation for the presence of the prints on the package, which could have been left behind when the defendant was on the premises during business hours. We concluded that the discovery of prints on a movable object in a public venue is insufficient to establish a person's presence at the crime scene during the commission of the crime.

In the case of *In re M.J.H.,* 988 A.2d 694 (Pa.Super.2010), we applied *Cichy* and reversed an adjudication of delinquency that was premised upon the juvenile's commission of acts constituting burglary and theft. In that case, a clothing store was ransacked and burglarized, and the juvenile's fingerprints were discovered on a clothing rack readily accessible to the public, but not at or near the point of illegal entry into the store. Additionally, evidence was presented that, on two or three occasions before the burglary, the juvenile was present in the store during normal operating hours.

We observed that the juvenile's fingerprints were discovered at a location where his presence was explained through innocent behavior and from an object with which he could have had legitimate contact. We concluded that the possibility that the juvenile had made innocent contact with the clothing rack was too great to permit a determination that he was the person who ransacked and burglarized the store. *See also Commonwealth v. Henry,* 875 A.2d 302 (Pa.Super.2005)(defendant improperly convicted of unauthorized use of a vehicle where lone evidence against him was that his fingerprints were found on movable object inside vehicle; such proof established only that the defendant had been present in vehicle at some point and was not sufficient to establish that he used the car without permission).

Conversely, in numerous cases, we have upheld the sufficiency of the evidence supporting a conviction premised solely on the fact that the defendant's fingerprints were at the scene of the crime. Pursuant to these decisions, imprints constitute sufficient evidence so long as the facts of the crime eliminate an innocent explanation for the presence of the defendant's fingerprints on an object. In *Commonwealth v. Price*, 278 Pa.Super. 255, 420 A.2d 527 (1980), a case highly similar to that herein, we upheld a conviction of burglary. The defendant was convicted of burglarizing a private residence, and the lone evidence linking him to that crime was the fact that, after the burglary, his fingerprints were discovered on a television located in the burglarized premises near the point of entry. Similar to the case herein, the homeowners left their house at 6:00 p.m., locked it, and closed the window, and when they returned six hours later, items were stolen. There were no fingerprints at the point of entry, an opened window, but the defendant's fingerprints were found on a nearby television. The homeowners testified that they did not know the defendant and that he did not have permission to enter their abode. There being no plausible innocent explanation for the defendant's imprints, we ruled that the evidence was sufficient to sustain the conviction.

The facts examined in *Commonwealth v. Wilson*, 258 Pa.Super. 231, 392 A.2d 769 (1978), are also analogous to those in the present case. In *Wilson*, the defendant and a cohort burglarized a private house and terrorized its occupants, who did not know defendant. The defendant's identification as a perpetrator was premised on the fact that his fingerprints were found in the home. The defendant challenged the sufficiency of the evidence supporting various convictions arising from the incident, and he claimed that "lacking eyewitness identification evidence or other circum-stantial evidence, fingerprint evidence alone is not sufficient to convict him." *Id.* at 771.

We disagreed with his sufficiency challenge because there was "simply no logical explanation for finding [defendant's] fingerprints on the lamp and closet in the . . . residence, except that he inadvertently placed them there while burglarizing the . . . home and terrorizing its occupants." *Id; see also Commonwealth v. Marrero*, 914 A.2d 870 (Pa.Super.2006) (fingerprints were located on interior hood of stolen car and engine was removed; location of prints was not susceptible to a reasonable inference of innocent contact and conviction was upheld); *Commonwealth v. Hunter*, 234 Pa.Super. 267, 338 A.2d 623 (1975)(defendant's fingerprints were located at point of entry to burglarized business and not in a public area where defendant would have had a legitimate right of access; burglary conviction upheld).

Herein, there was no innocent explanation for the presence of Appellant's fingerprints on the soda bottle located at the crime scene. The burglarized premises were a private residence, and Appellant, unknown to the owner, had no right to be located there. The proof also established that the impression on the soda bottle, even though movable, was made during the burglary. The bottle was in a kitchen cabinet and unopened at 6:00 p.m. on June 20, 2010, when the owner locked the door and closed the windows to her property. The item was found in the basement, opened, and partially consumed sixteen hours later. The burglary occurred during those hours. When discovered on June 21, 2010, the bottle had two imprints, a thumb and forefinger, which were identified as those of Appellant. Under the precepts applicable to fingerprint evidence,

Appellant's convictions therefore are not infirm.

Judgment of sentence affirmed.